**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**JOANNA MERCADO,**

Plaintiff,

v.

**FRANCES R. RABIAS,**

Defendant.

Civil Action No. 26-830 (ZNQ) (TJB)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by *Pro Se* Defendant Frances R. Rabias ("Defendant"). ( "Motion," ECF No. 6.)[1] Defendant filed a brief in support of his Motion. ("Moving Br.," ECF No. 6, p. 2–3.) *Pro se* Plaintiff Joanna Mercado ("Plaintiff"), filed an opposition to the Motion, with exhibits. ("Opp'n Br.," ECF No. 5, p. 2–22.) Defendant filed a reply. ("Reply Br.," ECF No. 7, p. 2–5.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Dismiss will be **GRANTED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

This case concerns interactions between Plaintiff and Defendant, an attorney, in connection with Plaintiff's marital separation.

[1] The parties did not paginate their Briefs. The Court therefore cites to the page numbers generated by the CM/ECF system.

The first set of allegations in the Complaint concern an email sent by Defendant. (ECF No. 1, "Compl.," ¶¶ 6–9; Ex. A.) It is unclear from the Complaint, or Exhibit A depicting the email, whether Defendant sent the email to a third party other than Plaintiff.[2] In the email, which was originally sent by Defendant on December 8, 2018, Defendant provided substantive legal guidance about the separation, including a financial assessment, an explanation of New Jersey divorce law, advice regarding self-representation in New Jersey courts, and an analysis of whether certain proposed legal arrangements were enforceable. (*Id.* ¶ 7.) Plaintiff replied to the email on July 11, 2019. The December 8th email is restated in full as follows:

> Thank you both for providing the information. It appears you are both very close to your desired goals to separate. The items you submitted coincide in many ways. The only item you are a bit apart on is the way the payment will be reserved, the $50,000, in the event you come back together and do not divorce. You will need to talk that out because there is no way to pay someone this money and ask for it back without an escrow agreement. Also the $50,000 could result in still more debt. Thus after having reviewed the circumstances for your separation I have come to the conclusion that it would be best if you hire a lawyer closer to where you both live and the court out there. I would charge somewhere around $1500 for the stipulation alone and you would both need to agree to waive the conflict of interest in having me draft the document for both of you, as generally a lawyer represents only one side, not both, but it is possible with a waiver. Court appearances for an attorney closer to you would be more economical if you had problems later on. I also believe you may want to explore more choices. In New Jersey there is also a divorce from bed and board. This means you live legally separated and would not be responsible for each other's debts. Otherwise there is no legal separation in NJ. You can contractually agree to separate, but are still responsible for each others debts. Then later that contract can be submitted for divorce. A divorce from bed and board means you may not remarry until you go back for a divorce. There are many online resources for drafting a simple separation contract between you and getting it notarized with a copy to each of you which would be fine if you agree you fully understand the terms of the agreement, make such contract willingly without duress. You can also file for such a divorce without an attorney if you feel comfortable with writing up the documents. Certainly this may be a good option if you fully agree with all the terms of the separation and the divorce and child. This can save you the cost of an attorney. I don't always recommend it, if you have genuine concerns that you may not get along

[2] Plaintiff alleges that the email was sent to an adverse party as well on December 8, 2018. (Compl. ¶ 6.)

> later, but it is a choice if you can get comfortable with doing a bit of reading on how to file. The court is a bit forgiving to pro se parties if they make mistakes, so long as all the parties agree fully it is an option.

(*Id.* at Ex. A.)

Plaintiff alleges that she did not execute a conflict waiver and did not retain Defendant as her attorney. (*Id.* ¶¶ 9–10.) Nonetheless, Plaintiff alleges that by sending the email, Defendant "injected herself into Plaintiff's legal affairs and influenced Plaintiff's understanding of her rights and options by virtue of Defendant's status as an attorney." (*Id.* ¶ 11.) At all times relevant, Plaintiff alleges that she was unrepresented by legal counsel, lacked legal sophistication, and suffered from emotional distress due to family and property disputes. (*Id.* ¶ 12.) Plaintiff alleges that she reasonably relied on Defendant's statements, i.e., the email, while Defendant knew or should have known that Plaintiff was unrepresented and vulnerable. (*Id.* ¶¶ 12–13.)

In October 2021, Defendant texted Plaintiff two times to request a phone call with Plaintiff for the purported reason that Defendant was "trying to avoid starting an action" and "avoid litigation." (*Id.* ¶¶ 14–17; Ex. B.) Defendant also left Plaintiff a voicemail, stating that she was calling for "Rianna," in an attempt to speak with Plaintiff. (*Id.* ¶¶ 14–17; Ex. C.) Plaintiff alleges that these communications were an unlawful attempt to coerce and pressure her, and Plaintiff perceived such communications as legal threats. (*Id.* ¶¶ 18–20.)

Plaintiff alleges that Defendant's conduct caused: (i) Plaintiff to refrain from retaining counsel and asserting her legal rights; (ii) material impairment to Plaintiff's property rights — including the recording of a deed that conveyed ownership interests without Plaintiff's informed consent; and (iii) Plaintiff to suffer ongoing legal, financial, and property-related harm. (*Id.* ¶¶ 21–24.) Plaintiff alleges that Defendant's conduct constitutes a misuse of state-conferred authority, and Defendant was acting "under the color of law" pursuant to 42 U.S.C. § 1983 ("Section 1983"). (*Id.* ¶¶ 25–27.) As a result, Plaintiff alleges that Defendant deprived her of due

process insofar as Defendant's conduct prevented Plaintiff from seeking legal counsel or engaging in legal proceedings in violation of various New Jersey Rules of Professional Conduct, and is therefore liable to Plaintiff pursuant to Section 1983. (*Id.* ¶¶ 28–39.)

On January 23, 2026, Plaintiff filed this suit. (ECF No. 1.) Defendant served the present motion to dismiss on Plaintiff on April 8, 2026 (ECF No. 6, p. 5) and filed that motion on April 14, 2026. (ECF No. 6.) Plaintiff filed her opposition to the motion a day prior on April 13, 2026. (ECF No. 5.) Defendant served her reply in further support of the motion on Plaintiff that same day, April 13, 2026. (ECF No. 7, p. 6.) Thereafter, Plaintiff filed a notice of untimeliness regarding Defendant's motion to dismiss, which was due on April 8, 2026, arguing that the delay in filing was "procedural gamesmanship" that coincided with Defendant's purported threat of Rule 11 sanctions to Plaintiff. (ECF No. 8.) Defendant filed opposition to that notice. (ECF No. 9.)

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over Plaintiff's claim under federal law pursuant to 28 U.S.C. § 1331.

## III. LEGAL STANDARD

A district court may grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), the "defendant bears the burden of showing that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Moreover, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (emphasizing that *pro se* complaints should be

construed liberally). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997). To that end, courts may also consider "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

To establish a claim under Section 1983, a plaintiff must show that she was deprived of a federally secured right by a defendant acting under color of state law. *See Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155–56 (1978); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1264 (3d Cir. 1994) ("In order to prevail on a claim under section 1983, a plaintiff must establish (1) the violation of a federally protected constitutional or statutory right, (2) by state action or action under color of law.") (citing Section 1983). "A privately retained attorney does

not act under color of law for purposes of § 1983." *Ray v. New Jersey*, 219 F. App'x 121, 124 (3d Cir. 2007) (citing *Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir.1980)). However, "private use of the challenged state procedures with the help of state officials constitutes state action for purposes of the Fourteenth Amendment." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 933 (1982). Thus, "a private party acts under color of law where the individual 'act[s] together with or has obtained significant aid from state officials.'" *Jordan*, 20 F.3d at 1267 (citing *Lugar*, 457 U.S. at 937). Absent such a showing, "a private party's mere invocation of state legal procedures" does not "constitute[] 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Lugar*, 457 U.S. at 939 n.21.

Defendant moves to dismiss Plaintiff's Section 1983 claim on four bases: (1) Plaintiff's allegations do not establish that Defendant, as a private attorney, acted under color of state law; (2) Plaintiff fails to allege a constitutional violation; (3) Plaintiff does not otherwise plead conspiracy between Defendant and a state actor; and (4) Plaintiff's claims are time-barred. (Moving Br. at 2.) Defendant avers that the conduct alleged in the Complaint amounts to the performance of traditional legal functions, and Plaintiff's allegation that Defendant "misused authority" as an attorney is conclusory insofar as Plaintiff fails to assert any factual allegations to support that Defendant acted on behalf of the State, exercised any governmental power, acted in concert or conspired with a state actor, or otherwise acted under the color of law. (*Id.*) Plaintiff argues in opposition that Defendant "knowing[ly] and tactical[ly] misuse[d ] her state-conferred authority to subdue Plaintiff's rights." (Opp'n Br. at 5.) Such conduct, Plaintiff argues, is "fairly attributable to the State." (*Id.* at 5–6 (citing *Lugar*, 457 U.S. at 922).) The crux of Plaintiff's opposition is that Defendant

> **leveraged the credibility and authority associated with her state-issued license (BAR #ID Number: 5256912)** to imply the ability

> to initiate litigation and affect legal rights, despite lacking any formal retention or standing. Defendant was not acting as counsel of record and was therefore not performing a 'traditional legal function,' but was instead invoking the authority of the legal system outside any lawful role.

(*Id.* at 5 (emphasis in original).)

Even making every inference in favor of Plaintiff and liberally construing all allegations as truthful, the Court finds that Plaintiff has failed to state a Section 1983 claim against Defendant. Plaintiff argues that Defendant "leveraged" her position as an attorney in carrying out litigation threats upon Plaintiff and in doing so "leveraged the authority of the judicial system." (*Id.* at 5–6.) But these claims, even if true, do not amount to conduct by Defendant under the color of law. Instead, Plaintiff appears to allege precisely the sort of private attorney conduct that is *not* actionable under Section 1983, absent some causal connection to the authority of the State: "a private party's mere invocation of state legal procedures" does not "constitute[] 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Lugar*, 457 U.S. at 939 n.21. Defendant's communications to Plaintiff stating that she wanted to "avoid starting an action" and "avoid litigation," even assuming arguendo to carry coercive sentiment directed at an unrepresented party, do not amount to conduct under the color of law. Plaintiff does not allege that Defendant was acting under State authority, beyond the mere contention that Defendant was a state-licensed attorney, to implicate Section 1983. The mere fact that Defendant was an "Officer of the Court," does not create a legally cognizable "chilling effect" on Plaintiff from the alleged conduct. (*See* Opp'n Br. at 7.)

Moreover, the Court agrees with Defendant that Plaintiff fails to allege a constitutional violation or any harm resulting from Defendant's conduct. Plaintiff contends that Defendant acted as an "enforcer" for a third party to "force an extra-judicial outcome," which "resulted in the impairment of Plaintiff's property rights and the recording of a deed without the informed consent,

notice, or hearing required by the Due Process Clause of the Fourteenth Amendment." (*Id.* at 7–8; Compl. ¶¶ 21–24.) But Plaintiff's allegations do not show a cognizable causal connection as to how Defendant's conduct actually affected Plaintiff's property rights or caused "the recording of a deed that conveyed ownership interests without Plaintiff's informed consent." (Compl. ¶¶ 21–24.) Without more, Plaintiff's allegations do not articulate how Defendant acted under color of law to violate a constitutionally protected right of Plaintiff.

In sum, the alleged conduct on the part of Defendant is not actionable under Section 1983. Moreover, the Court finds that, under the circumstances, further amendment would be futile. The Court will accordingly dismiss the Complaint with prejudice.[3]

---

[3] Futility of amendment is further supported here insofar as this suit also appears to be time-barred under N.J.S.A. 2A:14–2. The applicable state law determines when a Section 1983 claim accrues under the statute of limitations. *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010). "A [S]ection 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims. *Id.* (citing *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir.1989)). The parties here do not dispute that New Jersey is the applicable state here. New Jersey law mandates a two-year statute of limitations period for personal-injury torts. N.J.S.A. § 2A:14–2. "Thus, a section 1983 claim arising in New Jersey has a two-year statute of limitations." *Dique*, 603 F.3d at 185 (citing *Montgomery v. De Simone,* 159 F.3d 120, 126 n.4 (3d Cir.1998)). The alleged conduct here occurred between 2019 and 2021. (Compl. ¶¶ 6, 14–17.) As set forth above, this suit was filed in 2026, well past the two-year statute of limitations.

Moreover, the Court finds that Plaintiff's timeliness argument as to Defendant's late filing of its moving and reply briefs is not compelling. "The effect of striking the motion to dismiss would be to enter a default, and the [Third Circuit] 'does not favor entry of defaults or default judgments, . . . as it prefers adjudications on the merits.'" *Lewis v. Zaken*, 2023 WL 2612689, at *2 (W.D. Pa. Mar. 23, 2023) (quoting *Hill v. Williamsport Police Dep't*, 69 F. App'x 49, 51 (3d Cir. 2003); *see also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984) (stating the court's preference for deciding cases on the merits over default judgment); *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 2004) ("[W]e have repeatedly stated our preference that cases be disposed of on the merits whenever practicable.")

Plaintiff fails to allege any prejudice that she would, or has, sustained because of Defendant's delay in filing the Motion. Plaintiff admits she was served with a draft of the Motion on April 8, 2026 — the due date for Defendant's response to the Complaint. (ECF No. 8, at 1.) Thus, Plaintiff had actual notice of the Motion on that date, and Plaintiff's challenge is based solely on Defendant's failure to formally file the Motion until April 14, 2026 (and similar delay in filing the reply brief). In response, Defendant submits that Plaintiff suffered no prejudice, and Defendant attests that the Motion and reply brief were filed untimely because of personal health reasons and unforeseen delay in the mailing system. (ECF No. 9, at 2.) In the Certificate of Service accompanying the Motion, which was mailed to the Court on April 8, 2026 and received on April 14, 2026, Defendant certified that on April 8, 2026, a copy of the Motion was served on Plaintiff via certified mail and via email. (ECF No. 6, at 5; *see also* ECF No. 7, at 6 (Certificate of Service of Defendant's Reply Brief dated April 13, 2026).) Defendant's submissions in opposition support the assertion that Plaintiff was served via email with the Motion on April 8 and the reply brief on April 13. (*See* ECF No. 9, at 8–10.)

## V. CONCLUSION

For the reasons stated above, the Court will **DISMISS WITH PREJUDICE** Plaintiff's Complaint. An appropriate Order will follow.

Date: November 23, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

The Third Circuit has made clear that Rule 12 "provides only one circumstance in which an untimely motion can be considered—when the movant shows good cause." *United States v. Sok*, 115 F.4th 251, 261 (3d Cir. 2024) (citation modified). "Good cause is a flexible standard that will necessarily depend on the circumstances of a particular case." *Id.* at 263. While Fed. R. Civ. P. 5(d)(2) provides that a paper is filed by "delivering it" to the clerk, which in this case was delayed a week after each of Defendant's filing deadlines, the Court finds that Defendant has shown good cause to excuse the untimeliness of the filings; the Court also finds that Plaintiff has not suffered any prejudice due to that untimeliness. Therefore, to the extent Plaintiff moves to strike the Motion for untimeliness, that motion will be denied.